**.IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **KRISTEN BAILEY**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VITALCORE HEALTH STRATEGIES, LLC,**<br><br>**ALEX TAYLOR, MD,**<br><br>**&**<br><br>**BRITTANY JONES, RN**<br><br>**Defendants.** | ) | **Case No. ________________** |

## COMPLAINT

Plaintiff Kristen Bailey, by counsel, hereby submits her Complaint seeking judgment against Defendants Vitalcore Health Strategies, LLC ("VHS"), Alex Taylor MD, and Brittany Jones, RN. In support of her claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's federal law claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3),(4).

2. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within the Eastern District of Virginia.

4. Assignment to the Norfolk Division of the Eastern District of Virginia is proper, pursuant to local civil rule 3(b)(3), because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Chesapeake, Virginia.

## PARTIES

5. Plaintiff Kristen Ashley Bailey is an adult individual and resident of Virginia.

6. Defendant VitalCore Health Strategies, LLC, ("VitalCore") is a limited liability company organized in the State of Kansas, with a registered agent located in the city of Richmond, contracted to provide medical care to the inmates at the Chesapeake Correctional Center at all times relevant to his action.

7. Defendant Alex Taylor, MD is a physician who was at all relevant times employed or contracted to provide medical services at Chesapeake Correctional Center by VitalCore, and was acting under color of state law.

8. Defendant Brittany Jones is a registered nurse and Health Services Administrator (HAS) who was at all relevant times employed or contracted to provide medical services at Chesapeake Correctional Center by VitalCore, and was acting under color of state law.

## FACTUAL ALLEGATIONS

9. On or about June 9, 2024, Plaintiff was incarcerated at Chesapeake Correctional Center for a probation violation.

10. At the time of her incarceration, Plaintiff was pregnant, approximately 3½ weeks from her expected delivery date, and was denied bail.

11. Plaintiff delivered a baby on July 3, 2024, at Sentara Norfolk General Hospital and remained hospitalized due to post-delivery complications until July 8, 2024.

12. Plaintiff returned to Chesapeake Correctional Center on July 8, 2024, and remained in custody through the events described herein.

13. On August 15, 2024, beginning in the afternoon, Plaintiff began experiencing a serious medical emergency characterized by neurological symptoms including altered mental status, vomiting, fever, and seizure-like activity.

14. At approximately 3:42 PM on August 15, 2024, Plaintiff's family received urgent calls from other inmates reporting that Plaintiff was in serious medical distress, described as "not doing well," "burning up with fever and vomiting," and in need of immediate medical attention.

15. Throughout the afternoon and evening of August 15, 2024, family members made multiple phone calls to the correctional facility, reporting that inmates were stating Plaintiff was "dying," lying on the floor with her "eyes rolling back," and experiencing convulsions.

16. Despite these urgent reports of obvious potential neurological symptoms consistent with a medical emergency, Defendants failed to provide timely medical evaluation and treatment.

17. At approximately 7:56 PM on August 15, 2024, nursing staff observed Plaintiff to be "sluggish" with "clammy skin," complaining of pain, with vital signs of BP 140/100, pulse 46, temperature 97.7°F, and “sluggish pupil reaction.”

18. Despite these concerning findings including potential neurological findings, Dr. Taylor did not evaluate Plaintiff until approximately 10:03 PM on August 15, 2024—more than six hours after the initial emergency reports.

19. When Dr. Taylor finally evaluated Plaintiff at approximately 08:15 PM, he found her to be "difficult to arouse" with "episodes of vomiting" and altered mental status.

20. Despite the constellation of neurological symptoms and the prolonged timeline of deterioration, Dr. Taylor misdiagnosed Plaintiff's condition as a drug overdose.

21. Based on this misdiagnosis, Dr. Taylor administered Narcan (naloxone) twice, at approximately 8:22 PM and 8:26 PM.

22. While Plaintiff showed some improvement after the Narcan administration, Dr. Taylor made the decision to return her to the Medical Housing Unit for observation rather than seeking immediate emergency medical evaluation at a hospital.

23. At some point prior to 11:43pm on August 15, 2024 Brittany Jones, RN HSA was notified of Ms. Bailey's condition. She also instructed then attending nurses not to send Ms. Bailey to the emergency room.

24. Dr. Taylor's decision to forego emergency medical evaluation and Ms. Jones ratification of the same, were unreasonable given the severity of Plaintiff's neurological symptoms and the extended duration of her medical emergency.

25. During the early morning hours of August 16, 2024, Plaintiff's condition deteriorated significantly.

26. At approximately 4:00 AM on August 16, 2024, nursing staff found Plaintiff lying in urine, with her "head hanging off the bed," undressed from the waist down, and exhibiting profound neurological impairment.

27. Plaintiff was found to be responsive only to person and place (A&O x1-2), with a pulse of 55, oxygen saturation of 93%, diaphoretic, and with pinpoint pupils.

28. Emergency Medical Services was called, and Plaintiff was transported by ambulance to Chesapeake Regional Medical Center.

29. Upon arrival at Chesapeake Regional Medical Center at approximately 6:32 AM

on August 16, 2024, Plaintiff was found to be suffering from anoxic brain injury—brain damage caused by oxygen deprivation.

30. Hospital records indicate that Plaintiff's condition was not related to drug overdose, but rather to oxygen deprivation that had likely been ongoing for an extended period of at least 5 hours.

31. Plaintiff required intubation, mechanical ventilation, and intensive care treatment.

32. Plaintiff underwent emergency neurosurgical intervention, including placement of an external ventricular drain (EVD) to relieve intracranial pressure.

33. Hospital records document that Plaintiff had suffered significant anoxic brain injury with associated complications including obstructive hydrocephalus and cerebral cysts.

34. Plaintiff remained hospitalized for an extended period, requiring multiple surgical interventions and intensive medical management.

## COUNT I
## 42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs
## (Individual Defendants)

35. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

36. At all relevant times, Defendant Dr. Taylor was acting under color of state law in his capacity as a physician providing medical care to inmates at Chesapeake Correctional Center.

37. At all relevant times, Defendant Jones was acting under color of state law in her capacity as a nurse and HSA providing medical care to inmates at Chesapeake Correctional Center.

38. As a detainee being held at Chesapeake Correctional Center for probation violation, Ms. Bailey had a constitutional right under the Eighth and/or Fourteenth Amendments to

constitutionally adequate medical care for her objectively serious medical needs.[1]

39. Defendants Taylor and Jones were aware of facts from which they could infer that Plaintiff faced a substantial risk of serious harm from her medical condition.

40. Defendants Taylor and Jones knew or should have known that Plaintiff was suffering from an objectively serious medical need that required emergent attention.

41. Defendant Dr. Taylor acted with deliberate indifference to Plaintiff's serious medical needs by:

a. Ignoring multiple urgent reports of Plaintiff's emerging neurological emergency;

b. Unreasonably delaying medical evaluation for over six hours despite reports of serious symptoms;

c. Misdiagnosing a serious neurological condition;

d. Failing to arrange for appropriate emergency medical care despite obvious neurological compromise;

e. Making treatment decisions that were medically unreasonable under the circumstances.

42. Defendant Jones acted with deliberate indifference to Plaintiff's serious medical needs by:

a. Ignoring multiple urgent reports of Plaintiff's neurological emergency;

b. Failing to arrange for appropriate emergency medical care despite obvious neurological compromise;

c. Making treatment decisions that were medically unreasonable under the circumstances.

---

[1] Ms. Bailey was being held at the Chesapeake Correctional Center for a probation violation, so whether her status was one of pretrial detainee or inmate, for brevity sake both rights are asserted herein Count I.

43. The conduct of Defendants Taylor and Jones was objectively unreasonable and demonstrated deliberate indifference to Plaintiff's constitutional rights.

**COUNT II**
**State Law Medical Malpractice**
**(All Defendants)**

44. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

45. At all relevant times, Defendant VitalCore employed or otherwise controlled Defendants Taylor and Jones and all of the medical staff at the Chesapeake Correctional Center, in the course and scope of their employment, and therefore is vicariously liable for their actions.

46. At all relevant times, Defendant Jones owed a duty to Ms. Bailey to provide medical care that met the applicable standard of care and to ensure the proper access to emergent medical care as needed, and to not impede the proper provision of said care.

47. Defendant Jones breached her standard of care by ratifying Dr. Taylor's decision to refuse necessary emergent medical treatment.

48. At all relevant times, Defendant Dr. Taylor owed Plaintiff a duty to provide medical care that met the applicable standard of care for physicians practicing in similar circumstances.

49. Defendant Dr. Taylor breached the applicable standard of care in multiple ways, including but not limited to:

a. Failing to respond promptly to reports of Plaintiff's medical emergency;

b. Failing to recognize the signs and symptoms of anoxic brain injury and other serious neurological conditions;

c. Misdiagnosing Plaintiff's condition as a drug overdose when the clinical

presentation was inconsistent with overdose;

d. Failing to timely order appropriate diagnostic studies;

e. Failing to arrange for immediate emergency medical evaluation and treatment at an appropriate medical facility; and

f. Failing to provide adequate monitoring and observation given Plaintiff's serious neurological symptoms.

50. As a direct and proximate cause of Defendants' negligence, Plaintiff suffered severe anoxic brain injury and related complications.

51. Plaintiff's injuries were preventable and would not have occurred but for Defendants' departure from the applicable standard of medical care.

**DAMAGES**

52. As a direct and proximate result of Defendants' negligence and constitutional violations, Plaintiff has suffered and continues to suffer:

a. Severe anoxic brain injury resulting in permanent neurological deficits;
b. Loss of cognitive function and decision-making capacity;
c. Physical pain and suffering;
d. Mental anguish and emotional distress;
e. Loss of enjoyment of life;
f. Past and future medical expenses;
g. Loss of earning capacity;
h. Other economic and non-economic damages.

Accordingly, Plaintiff demands judgment against Defendants for damages, in the amount of $5,000,000.00 (FIVE MILLION DOLLARS) together with interest and costs and further demands a trial by jury on all issues so triable as a matter of right.

**A TRIAL BY JURY IS REQUESTED.**

June 11, 2025

Respectfully Submitted,
KRISTEN BAILEY

/s/

Jonathan Halperin (VSB No. 32698)
Andrew Lucchetti (VSB No. 86631)
Halperin Law Center, LLC
4435 Waterfront Dr, Suite 100
Glen Allen, VA 23059
Phone: (804) 527-0100
Facsimile: (804) 597-0209
Jonathan@hlc.law
andrew@hlc.law